[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS MOTION TO OPEN AND MODIFY JUDGMENTDATED MARCH 17, 1995
History
The plaintiff, Dennis Fustini, initially brought a petition for dissolution of the marital union with the defendant, Joann Fustini, which was dated May 28, 1991, and filed on June 5, 1991, with a return date of June 11, 1991, all as of record appears.
The plaintiff was represented by counsel. The defendant appeared by counsel on June 13, 1991. A claim for the Family CT Page 9757 Relations Trial List was filed on September 30, 1991. On May 8, 1991, a document entitled "Separation Agreement Preamble" was executed by the plaintiff and defendant in the presence of their then attorneys which agreement was filed with the court on November 7, 1991. The pertinent portions of the agreement for purposes of this memorandum after hearing the parties on November 6, 1996 and November 7, 1996 are as follows.
I. Alimony
"The husband shall pay the wife as alimony the sum of $200.00 per week, which shall terminate upon her death or remarriage or cohabitation with an unrelated male. Beginning August 1, 1995, the amount of alimony shall decrease to $175.00 per week; on August 1, 1999, the amount shall decrease to $150.00 per week; on August 1, 2003, the amount shall decrease to $125.00; on August 1, 2007, the amount shall decrease to $100.00 per week and be maintained at that level. The amounts of alimony aforementioned shall be non-modifiable unless the husband should involuntarily lose his position of employment such that his income suffers a substantial decrease; then the husband would be entitled to an appropriate decrease upon order of the court from the time of loss of employment but for a period not to exceed 90 days. It is further agreed that any rental income the husband receives from renters at the marital residence shall not affect the aforementioned alimony payments. Otherwise the amounts of alimony remain non-modifiable.
Alimony shall begin on May 16, 1991, or when ever the wife leaves the marital residence, whichever is later in date.
II. Life Insurance
The husband shall maintain term life insurance totalling $100,000 with the wife as beneficiary until either the wife's death or remarriage or other termination of alimony. The payment of insurance premiums shall be the responsibility of the husband."
On November 7, 1991, the petition was heard by the court,Mihalakos, J., and the court granted a dissolution of the marriage and other requested relief.
The judgment as to alimony and life insurance followed CT Page 9758 the terms of the agreement dated May 8, 1991. At the time that the matter was heard by the court on November 7, 1991, financial affidavits were filed by the parties.
Findings of Fact
The court makes the following findings of fact based on the hearing conducted on November 6, 1996 and November 7, 1996, at which both plaintiff and defendant were present and testified and each were represented by new counsel.
The plaintiff is retired from the United States Navy, having retired in 1980 after twenty years of service as a petty officer. At the time of the dissolution on November 7, 1991, the plaintiff was employed as an engineering technician for an entity known as Supships connected to the Trident Submarine Program at Electric Boat.
Starting in 1993, the plaintiff became concerned about the downsizing at Electric Boat. The plaintiff received a notice of job jeopardy in late 1994, and was separated from his employment in January, 1995, taking advantage of a separation allowance of $16,000.00, which has been expended in living costs.
The plaintiff's training and expertise was and is in Navy Weapons Systems. At the time of the plaintiff's separation from the Supships Program there was a three-year prohibition precluding his working in his field because of involvement in Navy weapons technology and Government classified material.
The plaintiff's sole source of income now is his Navy pension. Plaintiff's gross weekly income is $275.00 and his net weekly income, according to Plaintiff's Exhibit 13, filed at the time of the hearing, is $224.00. Plaintiff's weekly expenses are $547.00. Plaintiff's assets consist of a $31,000.00 equity in real estate known as 18 Pennywise Lane, Ledyard, and a trailer valued at $12,500.00 located at 24 Pacemaker Avenue, Norwich, where he resides. The Pennywise property is being exposed for sale.
The plaintiff has $5,000.00 coming due this month on a C.D. with a substantial portion going to counsel for fees. Plaintiff has no other assets of consequence. Plaintiff has remarried. Plaintiff has debts amounting to $45,608.00. CT Page 9759 (Plaintiff's Exhibit 13.) Plaintiff is age 52 and will not be eligible for Social Security for some time. On Plaintiff's November 7, 1991 financial affidavit, his weekly income from his Supship position was $715.60 plus his Navy pension of $232.33.
At the time of the hearing before Mihalakos, J., on November 7, 1991, those present were the plaintiff, his then counsel and the defendant's counsel. The defendant was in California. The defendant's financial affidavit dated November 4, 1991 and filed on the date of the hearing showed weekly net income of $472.64. The wife's financial affidavit was not available three days before the dissolution as required.
The defendant, on some date prior to November 7, 1991 had quit-claimed her interest in the Pennywise Lane property in consideration of $42,000.00 and no real estate interest appeared on her financial affidavit.
The plaintiff never saw defendant's financial affidavit until after the hearing.
After the dissolution, the plaintiff received notice from the I.R.S. relative to an audit involving failure to report bank interest in his former wife's name of which he had no knowledge.
The plaintiff paid the required penalty and interest of $522.00 to the I.R.S.
The defendant's father had passed away in 1990 in California. On the financial affidavit filed by the defendant on November 7, 1991 her total assets amounted to $50,874.03 which included what defendant had received from plaintiff on quit-claiming her interest in the Pennywise Lane property. On her November 4, 1996 affidavit, defendant's assets totaled $166,385.00. On defendant's November 7, 1991 financial affidavit she showed employment income of $233.00 weekly from the Marie DeCampos' estate. It is unclear whether these monies (the checks from the estate) are a portion of the $1,000.00 per month defendant was receiving by virtue of checks issued to her by her sister Jade DeCampos. (Defendant's Exhibit I, J H.) These checks are dated January 1, 1991, February 13, 1991 and June 1, 1991, all prior CT Page 9760 to the dissolution.
The defendant claims, however, that her sister wrote the wrong year on the checks and they were actually received and cashed in 1992. (See Plaintiff's Exhibit 1 showing nine checks each for $1,000.00 to the defendant January, 1991 through November, 1991.)
Reference is made to Plaintiff's Exhibit 3, a check in the amount of $32,000.00 dated July 29, 1991 payable to Joann Fustini or Philip DeCampos. No mention in part or in whole is made as to these funds in defendant's November 7, 1991 financial affidavit.
Reference is made to Defendant's Exhibit C, a letter from the Bank of America indicating that on August 12, 1991, a Time Deposit Account was opened in the names of Joann Fustini and Jade DeCampos, her sister, in the amount of $54,599.09. The account was closed on November 12, 1991, five days after the dissolution in Connecticut. (See also Defendant's Exhibit A, involving an account of $32,000.00 closed by the defendant on November 29, 1991 and transferred to her sister, Jade DeCampos.)
Plaintiff's Exhibit 15, a copy of a deed of property in San Mateo County, California shows that the defendant and her siblings conveyed to Marie L. DeCampos certain real estate testified to as worth $250,000.00 on August 31, 1994. When title was received by the defendant and others was not offered in evidence.
There was considerable testimony with regard to monies or accounts in the defendant's name, or her name and others, and under her Social Security Number, but the defendant's position was uniformly that these were not her funds, but belonged to her mother. It may be that the defendant viewed the matter in that light, but the court is satisfied that the defendant, for tax and legal purposes, had a recognizable interest in said assets.
The defendant may have felt a moral obligation based on love and affection to a parent to hold the view she did, but the court feels that a creditor or tax authority would clearly treat her as having control and an interest. CT Page 9761
The defendant testified to a course of conduct beginning after her father's death of transferring monies from her mother to the children, so that in due course the mother could qualify for medical, state and federal benefits. The defendant testified that the transfer back to the mother of the real estate was to avoid capital gains taxes.
An accurate picture of the defendant's financial situation does not appear to the court to be reflected on either her November 7, 1991 financial affidavit or the last one filed by her on November 4, 1996.
There were many exhibits introduced on both sides during this two day hearing.
It is difficult to follow the trail of various assets referred to or reflected in the exhibits.
The defendant's attitude appeared to be that where there was any question, any account belonged to her mother even though her name alone or with others was on the account or under her Social Security Number. This, and whatever course had been followed, was based on the advice of counsel in California.
Issues
1. Does the decree of dissolution granted on November 7, 1991 admit of modification mindful of its wording as to alimony in view of the provisions of § 46b-86 and in view of the fact that loss of employment was envisioned?
2. If the alimony may be modified, has there been a substantial change in the circumstances of either of the parties, more particularly the plaintiff Dennis Fustini?
3. Was the court misled in granting the November 7, 1991 decree by virtue of the defendant's failure to candidly and forthrightly make known her financial circumstances?
The Law
General Statutes § 46b-86 entitled "Modification of Alimony or Support Orders and Judgments" provides, in pertinent part, that: CT Page 9762
 "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . ."
The defendant relies on Barnard v. Barnard, 214 Conn. 91
at 117, note 7 to support her position that the decree by virtue of its wording is non-modifiable.
First, the court notes that the agreement and decree does provide for modification, although admittedly of a modest nature. It is, therefore, not absolutely non-modifiable.
Barnard is distinguishable from this proceeding. The note on which the defendant relies in Barnard states in part:
 "Each of the parties shall join in representing to the Court that it is an integral part of their agreement that the provisions relating to precluding a modification are essential to the disposition of this matter and shall jointly request that such decree contain the prohibition against modification as provided herein."
"If the decree is meant to be non-modifiable, it must contain language to that effect." Burns v. Burns, 41 Conn. App. 716,724 (1996). Unlike the representation made to the court by both parties in Barnard, the defendant saw fit to be in California at the time of the hearing.
Clearly, there has been a substantial change in financial circumstances on both sides.
The plaintiff did not voluntarily leave his position with Supship. Plaintiff took advantage of the $16,000.00 severance package before the ax fell on his position. Opportunities for work in plaintiff's field, due to defense downsizing, are limited or nonexistent.
The case of Billington v. Billington 220 Conn. 212 (1991) CT Page 9763 contains a paragraph that the court feels is appropriate in this matter, "[t]his principle of complete disclosure is consistent with the notion that the settlement of a marital dissolution case is not like the settlement of an accident case. It stamps with finality the end of a marriage. Marriage is a coming together for better or worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living; not political faiths; a bilateral loyalty, not commercial or social projects. . . . Whatever honesty there may, or should have been during the marriage should at least be required by the court at its end. . . . That goal requires, in turn, that reasonable settlements have been knowingly agreed upon." (Citations omitted; internal quotation marks omitted.) Id., 221.
The defendant's attitude to some questions posed by the court relative to assets was to the effect that where there was any question the asset was her mother's notwithstanding that her name or social security number might appear therein.
There are two principle factors that cause the court to come to the resolve that the issue as to alimony and the obligation as to the life insurance should be reopened.
First is the presence in the decree itself allowing for modification on loss of employment admittedly with the time limitation. It was, therefore, envisioned that modification might be necessary and the provision is like the key in a lock allowing its opening.
Second, the court feels that the requisite degree of candor was not present at the time of the decree. It may be that the defendant, who holds a power of attorney for her mother believed that she was morally bound to use or handle certain substantial assets only for the mother, even though in her name, but there is no indication of any disclosure that in equity should at least have been made known to the court as to certain bank accounts or assets.
At such time as the plaintiff is eligible for Social Security his navy pension will be adjusted downward.
Although not required to do so, plaintiff refinanced the Pennywise Lane property so that the defendant no longer had CT Page 9764 any financial liability on the mortgage at a cost to plaintiff of $3,500.00.
The plaintiff applied for unemployment benefits and the application was rejected. Plaintiff's formal education extended through high school. Other technical skills were acquired in the naval service.
The defendant continued motor vehicle registrations in Connecticut although not a resident thereof and admitted signing her former husband's name on renewals after the dissolution through August, 1993. (See Plaintiff's Exhibit 12.)
No matter what resolve the court comes to, the plaintiff must seek whatever employment may be available just to survive. Plaintiff's former skill is apparently no longer in demand and he may have to resort to more mundane tasks.
Admittedly, the defendant gave up any interest in plaintiff's military retirement. The marriage was of 26 years duration. The cost to maintain the life insurance is $64.00 monthly.
Admittedly, General Statutes § 46b-86 (a) permits or allows periodic awards of alimony that are nonmodifiable.
Provisions for nonmodification are, however, generally not favored, but to be upheld must be clear and unambiguous.Calorossi v. Calorossi, 4 Conn. App. 165, 168 (1985). See also Bronson v. Bronson, 1 Conn. App. 337, 339 (1984).
The judgment is reopened as to alimony only and modified to $75.00 weekly.
The plaintiff shall reinstate the term life insurance in the amount of $100,000.00 and pay the premiums therein.
The court was not provided with any figures as to any claimed arrearage and makes no finding thereon.
The court makes no allowance for any attorney's fees and expenses claimed by the defendant.
Hadley W. Austin CT Page 9765
Judge Trial Referee
CT Page 9765